John T. McTIERNAN, Plaintiff-Appellant,

v.

John A. GRONOUSKI, as Postmaster General of the United States, John W. Macy, Jr., as Chairman and L. J. Andolsek and Robert E. Hampton, as Commissioners, constituting the United States Civil Service Commission, Defendants-Appellees.

No. 443, Docket 28818.

United States Court of Appeals Second Circuit.

Argued May 25, 1964.

Decided Aug. 28, 1964.

Morris Weissberg, New York City, for plaintiff-appellant.

John W. Douglas, Asst. Atty. Gen., Joseph P. Hoey, U. S. Atty., Sherman L. Cohn, Edward Berlin, Harvey L. Zuckman, Attys., Dept. of Justice, for defendants-appellees.

Before LUMBARD, Chief Judge, and WATERMAN and HAYS, Circuit Judges.

WATERMAN, Circuit Judge.

This is an appeal from a decision of the United States District Court for the Eastern District of New York, granting, upon cross-motions for summary judgment, a judgment in favor of the defendants in a suit brought by a dismissed postal employee against the Postmaster General and the three members of the United States Civil Service Commission wherein appellant sought a declaration that certain acts of the Post Office Department and of the Civil Service Commission were invalid, and sought an order directing the Postmaster General to reinstate appellant as Postmaster of the Central Islip, New York, Post Office, the position he had held until his dismissal. Following an examination of the operation of his post office by two postal inspectors, written charges were filed against appellant, a veteran of the armed services, alleging, among other allegations, a failure by appellant "to conduct the post office at Central Islip, N. Y., in accordance with the instructions of the Post Office Department as evidenced by the inspection of your office starting on February 6, 1959, which disclosed 82 irregularities, two of which were recurrent from the previous inspection." [1] After appellant was given an opportunity to reply to the charges orally and in writing, the Post Office Department, on July 23, 1959, ruled that appellant was to be removed from office. Thereafter an appeal by appellant to the Civil Service Commission proved unsuccessful, and the proceedings before that agency finally terminating on February 9, 1961,[2] on May 19, 1961 appellant was removed from office. More than two years later, on May 21, 1963, appellant commenced this action in the district court to secure reinstatement, alleging that his removal from office had been effected as a result of proceedings which had failed to comply with the provisions and enabling regulations of the Veterans' Preference Act, 5 U.S.C. § 851 *et seq.*, a statute which grants to a qualifying veteran such as appellant certain procedural rights in administrative proceedings involving disciplinary action against federally employed veterans. Inasmuch as our examination of the record convinces us that appellant's numerous claims of procedural irregularity are groundless, we

1. Although six other charges were lodged against appellant, none of them were sustained in the administrative proceedings which resulted in his dismissal, and therefore only the seventh charge is relevant to this appeal.

2. Appellant appealed initially to the Director of the Second United States Civil Service Region and, after a hearing, the Commission's Regional Appeals Examiner on July 5, 1960 handed down a decision affirming the Post Office Department's dismissal of appellant. Appellant then took the appeal to the Civil Service Commission's Board of Appeals and Review, which on December 9, 1960 affirmed the decision of its Regional Office, and subsequently, on February 9, 1961, denied appellant's motion for a rehearing.

affirm the lower court's grant of summary judgment in favor of appellees.[3]

■ We approach the issues raised upon this appeal mindful of the limited permissible scope of judicial review in this area. The taking of disciplinary action against government employees, including the invocation of the sanction of dismissal, is a matter of executive discretion, and is subject to judicial supervision only to the extent required to insure "substantial compliance with the pertinent statutory procedures provided by Congress," Hargett v. Summerfield, 100 U.S.App.D.C. 85, 243 F.2d 29, 32 (D.C.Cir. 1959), and to guard against arbitrary or capricious action, Pelicone v. Hodges, 116 U.S.App.D.C. 32, 320 F.2d 754, 755 (1963). See also Wallace v. Day, 328 F.2d 565 (D.C.Cir. 1964) (*per curiam*); Studemeyer v. Macy, 116 U.S. App.D.C. 120, 321 F.2d 386, 387, cert. denied, 375 U.S. 934, 84 S.Ct. 337, 11 L.Ed.2d 265 (1963).

Appellant's first claim of procedural irregularity relates to certain affidavits which one of the postal inspectors who initiated the charges against appellant obtained from three employees of the Central Islip Post Office and which were submitted to the Post Office Department in Washington in support of the charges lodged against appellant. Neither the existence nor the contents of the affidavits were revealed to appellant either before he filed his answer to the charges or before the Post Office Department's July 23, 1959 decision ordering his dismissal. It is appellant's contention that this failure to make known to him the contents of these affidavits violated Postal Manual Regulation 745.621-a, which provides that an appointing officer's report on an employee under consideration for disciplinary action "shall not include any new charges or evidence to which the employee has not had opportunity to reply." The government argues, on the other hand, that this regulation is not designed to confer any procedural rights upon one in appellant's position, but is merely designed "to govern the internal reports of those in the chain of disciplinary decision-making."

■ While we have trouble with the government's construction of the regulation, for it is difficult to see what purpose this restrictive regulation is designed to serve if not to prevent the presentation to Post Office Department officials of a one-sided case against an employee threatened with disciplinary action, we need take no definite view of the proper interpretation to be accorded the regulation. Nor do we need to decide whether the withholding of these affidavits contravened certain statutory procedural rights due appellant under Section 14 of the Veterans' Preference Act, 5 U.S.C. § 863,[4] and particularly his right to an

---

3. We find it unnecessary to consider the government's argument that appellant's suit, brought two years after his removal from office, is barred by reason of laches, or to weigh appellant's claim that this delay was due to the intervening illnesses of himself, his counsel, and members of his family and to other misfortunes similarly beyond his control.

4. Section 14, 5 U.S.C. § 863, provides as follows:
"No permanent or indefinite preference eligible, who has completed a probationary or trial period employed in the civil service, or in any establishment, agency, bureau, administration, project, or department, hereinbefore referred to shall be discharged, suspended for more than thirty days, furloughed without pay, reduced in rank or compensation, or de-

barred for future appointment except for such cause as will promote the efficiency of the service and for reasons given in writing, and the person whose discharge, suspension for more than thirty days, furlough without pay, or reduction in rank or compensation is sought shall have at least thirty days' advance written notice (except where there is reasonable cause to believe the employee to be guilty of a crime for which a sentence of imprisonment can be imposed), stating any and all reasons, specifically and in detail, for any such proposed action; such preference eligible shall be allowed a reasonable time for answering the same personally and in writing, and for furnishing affidavits·in support of such answer, and shall have the right to appeal to the Civil Service Commission from an adverse decision of the administrative offi-

advance written notice of charges against him "stating any and all reasons, specifically and in detail," and his right to an opportunity to answer such charges.[5] If indeed error were committed in the course of the Post Office Department's disciplinary proceedings through a failure to reveal these affidavits the error was rendered harmless when appellant was shown the affidavits almost three months in advance of the subsequent Civil Service Commission hearing on his dismissal, a hearing incident to appellant's exercise of his right under the Veterans' Preference Act to appeal to that Commission from the adverse decision of the Post Office Department. Section 14 of the Veterans' Preference Act, providing, *inter alia*, that upon an employee's appeal to the Commission the Commission is to investigate and consider evidence and submit findings and recommendations binding upon officers in the employee's department, indicates that a proceeding so brought before the Commission is not an ordinary appeal but is rather contemplated to be of the nature of a *de novo* hearing. The regulations governing the conduct of such appeals before the Commission provide, for example, for the taking of testimonial and documentary evidence and the cross-examination of witnesses. Thus appellant was granted a hearing *de novo* on the merits of his dismissal and, as he was shown well in advance of the *de novo* hearing the affidavits of which he was denied notice prior to the departmental hearing, any error which may have clouded the earlier proceedings because of this non-disclosure has been cured,[6] and appellant cannot now rely on that non-disclosure in pressing his efforts to have his dismissal overturned. Green v. Baugham, 100 U.S.App.D.C. 187, 243 F. 2d 610 (D.C.Cir.), cert. denied, 355 U.S. 819, 78 S.Ct. 25, 2 L.Ed.2d 35 (1957).

cer so acting, such appeal to be made in writing within a reasonable length of time after the date of receipt of notice of such adverse decision: *Provided*, That such preference eligible shall have the right to make a personal appearance, or an appearance through a designated representative, in accordance with such reasonable rules and regulations as may be issued by the Civil Service Commission; after investigation and consideration of the evidence submitted, the Civil Service Commission shall submit its findings and recommendations to the proper administrative officer and shall send copies of the same to the appellant or to his designated representative, and it shall be mandatory for such administrative officer to take such corrective action as the Commission finally recommends: *Provided further*, That the Civil Service Commission may declare any such preference eligible who may have been dismissed or furloughed without pay to be eligible for the provisions of section 864 of this title."

5. Whether appellant's Veterans' Preference Act rights were violated in this regard would, of course, depend upon whether the affidavits in question were merely items of evidence supporting the charges and reasons therefor of which appellant had been given notice, or whether they were themselves "reasons" for the charges within the meaning of the statute. Compare Vitarelli v. Seaton, 359 U.S. 535, 541–42, 79 S.Ct. 968, 973–974, 3 L.Ed.2d 1012 (1959) (where the Court, interpreting a departmental regulation which required that a statement of charges against an employee be "as specific and detailed" as security considerations permitted, ruled that the regulation required that an employee who was to be asked specific questions at his hearing about past associations and activities should be given notice of the information contained in such questions in the statement of charges); with Green v. Baugham, 100 U.S.App.D.C. 187, 243 F. 2d 610, 612 (D.C.Cir.), cert. denied, 355 U.S. 819, 78 S.Ct. 25, 2 L.Ed.2d 35 (1957) (where the Court held that even though certain information and memoranda which had been secured during the investigation of an employee had not been made available to him at the time charges had been lodged against him, the charges had nevertheless been stated with sufficient specificity to meet the requirements of the Veterans' Preference Act).

6. Appellant's reliance in this regard upon Vitarelli v. Seaton, supra note 5, is entirely misplaced, for in that case the employee's procedurally defective hearing was not followed by a correctly conducted *de novo* hearing.

■■ Appellant further claims that his dismissal should be voided because of other Post Office Department conduct which he alleges violated not only Postal Manual Regulation 745.621–a, but also that part of Section 14 of the Veterans' Preference Act which grants to employees against whom the taking of serious disciplinary action is being contemplated the right to answer personally and in writing charges which have been made against them. Appellant's contention in this regard is based upon a claimed withholding from him by the Post Office Department, prior to his answering the charges which had been made against him in the departmental proceedings, of a cashbook and related records which had earlier been removed from appellant's post office by postal inspectors. Our examination of the record, however, convinces us that the alleged withholding of these items simply did not take place. Although the Post Office Department official having custody of the seized cashbook and records refused to permit appellant and his attorney to take possession of them, he did, sometime prior to the date appellant first answered the departmental charges, meet with appellant's attorney to show and explain the items to him, and at that time he indicated that appellant and his attorney were free at any time to go to the office where the cashbook and records were kept and were free to examine them there. We think this was a sufficient accommodation of any right which appellant had to examine the items by virtue of either Postal Manual Regulation 745.621–a or Section 14 of the Veterans' Preference Act. Moreover, since the cashbook and records were introduced in evidence during the departmental proceedings, thus giving appellant a clear opportunity to examine

them as part of the record of those proceedings well in advance of the subsequent *de novo* hearing on his dismissal before the Civil Service Commission, this contention also merits rejection for the same reasons we set forth in rejecting appellant's first claim of error.

■ The third ground upon which appellant relies relates to a failure by the Post Office Department to produce, at the hearing before the Civil Service Commission, three employees of the Department whom appellant had requested the Department to produce at that hearing. One of the employees, a postal inspector, had executed affidavits which were included as evidence in the record of the departmental hearing against appellant; but neither of the other two employees, who were departmental officials who had participated in the departmental proceedings covering appellant's dismissal, ever testified in any way against appellant. Failure by the Department to produce these witnesses at the Commission hearing, appellant claims, violated 5 C.F.R. § 22.603, which requires that at such hearings an opportunity be afforded the employee charged to introduce evidence, including the testimony of witnesses, and to cross-examine witnesses.[7] The government, relying on 5 C.F.R. § 22.607, which provides that the Commission is not authorized to subpoena witnesses and that the charged employee and his department must make their own arrangements for the appearance of witnesses,[8] takes the position that an employee involved in a Commission hearing has the full burden of arranging for the attendance of any witnesses he desires to question and that his department or agency is not obliged to make available for him any prospective witnesses in its

---

7. The regulation provides as follows:
 "§ 22.603 Introduction of Evidence. Opportunity will be afforded for the introduction of evidence (including testimony and statements by the employee and his designated representative and witnesses and by representatives of the agency and its witnesses) and for the cross-examination of witnesses."

8. The regulation provides as follows:
 "§ 22.607 Appearance of Witnesses. The Commission is not authorized to suboena witnesses. The employee and his designated representative, and the employing agency, must make their own arrangements for the appearance of witnesses."

employ. We would be most reluctant to adopt the very broad construction of this regulation urged upon us by the government. Certainly the regulation itself, which only deprives the Civil Service Commission of the subpoena power, and which somewhat ambiguously directs the employee and his employing agency to arrange by themselves for the appearance of witnesses, would appear to constitute no clear bar to a ruling that, under appropriate circumstances, the agency may be required to cooperate with the employee by directing that persons under its direction and control whose presence is required for the presentation of a defense by the employee attend the hearing. Moreover, the United States Supreme Court, interpreting this very regulation in Williams v. Zuckert, 372 U.S. 765, 83 S.Ct. 1102, 10 L.Ed.2d 136 (1963) (*per curiam* opinion on rehearing), has clearly indicated that, after the discharge by the employee of his initial burden to arrange by himself for the attendance of witnesses whose presence he desires at a Commission hearing, timely notice by him to the agency may require it to produce for cross-examination persons employed by it who have furnished information against the employee.[9] But we need not adopt the broad construction of this regulation urged by the government in order to hold that appellant's third claim of error must be rejected, for the record fails to indicate that appellant discharged the initial burden imposed upon him by Williams v. Zuckert, supra, that of attempting to secure the attendance of the desired witnesses himself—instead the record indicates that appellant did

no more than notify the Post Office Department of his desire to have it produce the witnesses at the hearing. There being, then, no suggestion that appellant, on his own, initially contacted these witnesses and unsuccessfully attempted to arrange privately for their attendance at the hearing, no procedural rights to which appellant was entitled were violated when the Post Office Department failed to respond to his request.

██ Nor do we find persuasive appellant's argument that his dismissal from the postal service made him the victim of unduly excessive punishment under Postal Manual Regulation 745.-622, which provides that "removal for a first offense is appropriate only for a serious violation of law or postal regulation, or for criminal, infamous, dishonest, immoral, or notoriously disgraceful conduct." While the government admitted in its answer filed in the district court that the charges against appellant did not involve any claim that appellant had committed any criminal, dishonest, or immoral act, this was not an admission that appellant had not been charged with conduct permitting dismissal under Postal Manual Regulation 745.622, for that regulation, as quoted above, permits dismissal for serious violations of postal regulations. Appellant was charged with having failed to conduct his post office in accordance with instructions of the Post Office Department, in that he ran a post office operation fraught with 82 specific irregularities in administration, mail handling, and financial transactions. The Civil Service Commission determined after a hearing that 55 of these

---

9. Language in the earlier opinion of the Court in the Zuckert case, 371 U.S. 531, 83 S.Ct. 403, 9 L.Ed.2d 486 (1963) (*per curiam*) indicates that the same rule may well apply to witnesses the employee desires produced at the hearing for the purposes of direct examination. The Court stated that both as to witnesses needed upon direct examination and those who should be available for cross-examination the employee had the "initial burden" of securing their at-

tendance and thereby the Court implied that as to both classes of witnesses the employing agency may be required to produce them, if it is able to, once the employee's initial burden to produce them has been discharged without success. This language was left unimpaired by the subsequent order on rehearing, for that order was merely prompted by a desire to permit the employee to establish by proof certain factual contentions he had advanced in his petition for rehearing.

charges of irregularities had been fully sustained and that 8 others had been partly sustained. We cannot say that the Commission in determining, as it must have, that this conglomeration of irregularities taken together amounted to a serious violation of postal regulations, acted arbitrarily or capriciously. Therefore, appellant's dismissal did not contravene the provision of the Postal Manual he relies upon. For the same reason we reject appellant's further claim that before he was dismissed he did not receive a written warning relating to his offending conduct, although he was entitled to one. Postal Manual Regulation 745.341 expressly provides that "in aggravated cases or where serious offenses are involved, formal charges may be preferred against the employee without regard to the written warning requirement; for example * * * serious violations of postal regulations."

 Finally, appellant has included in his brief four additional claims of error, which he has set forth in a most sketchy fashion. He claims that many of the sustained charges of irregularity lacked the required specificity, that his replies to the irregularities with which he was charged required the Post Office Department to investigate further the facts and that this was not done, that the charges against him were not filed by the proper officials, and that he was the victim of bias and prejudice. We devote to these claims the attention which they deserve in view of their lack of substance and in view of the superficial way appellant has presented them. Our examination of the case record convinces us that there is no merit whatever in appellant's claim that many of the charges of irregularity sustained against him lacked the required specificity. The charged irregularities cited by appellant in support of this claim primarily involved continuing practices or conditions for which no definite time or date could possibly be stated and were irregularities which appellant obviously knew existed on the day of the inspection which gave rise to the charges. Moreover, the charges which appellant now claims were unduly vague were specific enough to permit him, with no hint of any difficulty engendered by vagueness, to file a written answer to them during departmental proceedings. And, too, appellant admitted to all but a few of them and promised to take corrective action in the future. Equally insubstantial is appellant's claim that his reply to the irregularities with which he was charged necessitated a further investigation of the facts by the Post Office Department. Postal Manual Regulation 745.51 provides that a further investigation should be made when an employee's reply to charges makes this necessary, and vests Department Officers with discretion as to whether to proceed with further investigation after receiving an employee's reply. We do not find that this discretion was abused in appellant's case, particularly as he admitted in his reply that most of the irregularities charged had in fact existed. We also reject appellant's argument that the administrative proceedings were deficient because the charges against him were not filed by the proper officials. There is nothing in Postal Manual Regulation 745.22 which indicates that the postal inspectors who had inspected appellant's post office operation could not, acting on behalf of the Regional Operations Director, file charges against appellant arising out of facts found during their inspection. Finally, appellant's claim of bias and prejudice in these administrative proceedings, manufactured largely out of bits and pieces of his other claims of error which we have already discussed, is a clear makeweight wholly unsubstantiated by the record.

Affirmed.