611 F.2d 658
 James ELLIOTT, Plaintiff-Appellant,
v.
Frederick PHILLIPS; Clarence Gels; Benjamin Franklin Baylor;
Diamond Mendonides; Peggy Griffith; Lisbon
Tillman; Charles Stanislav; and Herman
Staiman, Defendants-Appellees.
 No. 77-3544.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 30, 1979.
Decided Dec. 27, 1979.
 
 Bernard I. Rosen, Robert C. Meeker, Blakemore, Rosen & Norris Co., L. P. A., David A. Lieberth, Akron, Ohio, for plaintiff-appellant.
 William D. Beyer, U. S. Atty., Joseph A. Cipollone, Patrick M. McLaughlin, Asst. U. S. Attys., Cleveland, Ohio, for defendants-appellees.
 Before WEICK and BROWN, Circuit Judges and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 James Elliott, a postal employee in the Akron, Ohio, Post Office, has appealed to this court from an order denying his motion for summary judgment and an order of the district court granting the motion of the defendants for summary judgment in his action for mandamus to compel reinstatement to his former position as Quality Control Officer and back pay. He had been discharged by the U. S. Postal Service of Akron after an indefinite suspension for immoral and notoriously disgraceful conduct requiring his removal from office in order to promote the efficiency of the Service. Elliott appealed to the Federal Employee Appeals Authority of the United States Civil Service Commission and was granted an evidentiary hearing. As found by the Appeals Authority, Elliott had been discharged for the following reasons:
 
 
 2
 Conduct Unbecoming a Postal Employee in Establishing Sexual Relationship with a Postal Employee and Killing Employee's Spouse.
 
 
 3
 In late 1972, you began a sexual affair with Shirley Schell, a Postal Employee who was working for you at the time. Mrs. Schell became pregnant by you and later initiated divorce proceedings against her husband, Erwin Schell. Mr. Schell hired a private detective, became aware of your involvement with his wife, and had heated discussions with you concerning this matter. On May 1, 1975 you shot and killed Mr. Schell allegedly in self defense.
 
 
 4
 You and Mrs. Schell, in the presence of your attorney, Robert Meeker, on May 30, 1975, admitted the facts contained in this charge to Postmaster Fred Phillips, Akron and Edward Brennan, SCF Director of Employee Relations.By your actions, your ability to function in a management position has been brought into serious doubt. The morality of your actions is not consistent with the standards required for a Postal employee. Attendant employee knowledge of the incidents, combined with local publicity has reflected unfavorably upon the Postal Service, and made your continued employment not in the best interests of the Postal Service.
 
 
 5
 The Appeals Authority conducted an evidentiary hearing and rendered a written decision in which it adopted findings of fact and an analysis of the issues. In discussing the merits of the discharge the Appeals Authority stated:
 
 
 6
 The first is whether or not the agency has established the alleged facts which support its reasons for the action by a preponderance of the evidence; the second is whether or not the reasons advanced by the agency constitute "such cause as will promote the efficiency of the service."
 
 
 7
 Appellant does not contest the truthfulness nor accuracy of the agency's charge. In fact, he had admitted the facts and reasons put forth by the agency in its proposal notice to remove him. Accordingly, it is found that the agency has established, by a preponderance of the evidence, the facts which support its reasons for the removal action against appellant.
 
 
 8
 "Among the reasons that constitute 'such cause as will promote the efficiency of the service' for this purpose are the reasons for disqualification of an applicant listed in S 731.201(b)-(g) of this chapter" (Section 752.104(a)). Section 731.201(b) lists: "Criminal, infamous, dishonest, immoral or notoriously disgraceful conduct." Immoral is that conduct which is "inimical to public welfare according to the standards of a given community, as expressed in law or otherwise. Exchange Nat. Bank of Fitzgerald v. Henderson, 139 Ga. 260, 77 S.E. 36, 37" (Blacks L.Dict., Rev. Fourth Ed.).
 
 
 9
 Sexual intercourse with a married person not one's spouse is considered "inimical to public welfare according to the standards" of almost every, if not every, "community" in the United States as expressed by public opinion and censure. Moreover, conduct very similar, if not identical, to appellant's, is expressed as being against the law of the vast majority, if not all, of the states, E. g., adultery and fornication. There has been no evidence presented that the law of the State of Ohio, or that the standards of the City of Akron, Ohio, differ in any material respect from those of the majority of jurisdictions.
 
 
 10
 Furthermore, it cannot be said that appellant's sexual relationship with another Postal Service employee who was married to a third person is not notorious, I. e., generally known and spoken of, and had not proven to be a source of "disgrace" to the Postal Service and appellant. Accordingly, it is found that appellant's sexual relationship and the publicity it received constituted immoral conduct and notoriously disgraceful conduct.
 
 
 11
 Appellant argues that his sexual relationship has not affected his work nor has it affected the efficiency of the service. As shown Supra, Section 752.104(a) states that the reasons for disqualification listed in Section 731.201(b) constitute "such cause as will promote the efficiency of the service." Therefore, the agency has shown that appellant's conduct has affected the efficiency of the service.
 
 
 12
 Furthermore, the agency produced testimony from various witnesses that appellant's ability to function effectively in his position was significantly diminished. These witnesses represented management officials with whom appellant must deal in his position. The witnesses produced by appellant were in large part personal friends of his who would most probably react differently than would the public or Postal Service employees in general. Moreover, there is evidence that appellant's own personal friends in the Postal Service advised him against continuing the relationship. This indicates that they disapproved of it and that it had an adverse effect upon appellant.Appellant also argues that it is not the agency's or the Commission's role to "enforce absolute moral judgments." The agency alleges that it considered appellant's total conduct and not just one isolated part of it. Likewise, in deciding this appeal, the Authority does not assume that since appellant committed X act there is an irrebuttable presumption that appellant may be removed. In deciding this appeal the Authority considered pertinent laws and regulations; appellant's conduct; the identity of the person with whom the conduct took place; the notoriety of the conduct; how the situation unfolded; the judgment involved; and the standards of the community as expressed by public opinion and laws.
 
 
 13
 Appellant also argues that he is "not responsible for the adverse publicity the Postal Service may be getting." While this assertion is certainly questionable, it is really irrelevant who is responsible. The fact remains that appellant's sexual relationship was reported on the radio and in the press; that appellant was a Postal Service employee was mentioned at least once; and that the publicity was unfavorable to the Postal Service.
 
 
 14
 Appellant next argues that the agency has violated his right to privacy. However, here, appellant's actions became open and notorious before the agency took any action and, more importantly, the enjoyment of the right to privacy does not extend to violations of public policy.
 
 
 15
 Based upon the above, it is found that the agency has established, by a preponderance of the evidence, the facts which support its reasons for the removal action against appellant. It is further found that the agency's charge against appellant constitutes such cause as will promote the efficiency of the service.
 
 
 16
 The Appeals Authority reversed the agency action in indefinitely suspending Elliott on procedural grounds and affirmed the action of the agency in removing Elliott from his position.
 
 
 17
 The mandamus action filed by Elliott in the district court was carefully considered and decided by District Judge Contie in a Memorandum Opinion and Order.
 
 
 18
 He discussed the rights of Elliott as a veteran holding that he is a "preference eligible employee" within the meaning of 5 U.S.C. § 7512. As such, Elliot could only be discharged for such cause as would promote the efficiency of the service.
 
 
 19
 Judge Contie stated: The Plaintiff has not challenged the Appeals Authority's findings of the underlying facts of this case.
 
 
 20
 Judge Contie held that there was a rational nexus between Elliott's conduct and his position as a Quality Control Officer and concluded that the Appeals Authority's finding that to dismiss Elliott would "promote the efficiency of the service" is supported by substantial evidence.
 
 
 21
 The scope of review in this type of case is limited. We are permitted to overturn determinations of an administrative body only if they are not supported by substantial evidence. 5 U.S.C. § 706(2)(E). Jones v. Priebe, 489 F.2d 709, 710 (6th Cir. 1973).
 
 
 22
 Determination was made in this case by the Appeals Authority. It was affirmed by the district court. In our opinion, there was substantial evidence to support the factual findings of the Appeals Authority and they are not clearly erroneous. Its decision was correct.
 
 
 23
 The fact that the Grand Jury returned a "No Bill" is not much help to Elliott. It does not operate as an acquittal. It merely means that this particular Grand Jury decided not to indict Elliott. Another Grand Jury could subsequently decide differently and return an indictment.
 
 
 24
 The judgment of the district court is affirmed.